# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————————

## No. 201500106

————————————————

## UNITED STATES OF AMERICA
Appellee

v.

## JOHN A. KING
Private (E-1), U.S. Marine Corps
Appellant

————————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Christopher M. Greer, USMC.
For Appellant: Lieutenant Commander Ryan C. Mattina, JAGC, USN.
For Appellee: Captain Sean M. Monks, USMC; Lieutenant James M. Belforti, JAGC, USN.

————————————————

Decided 15 December 2016

————————————————

Before CAMPBELL, RUGH, and HUTCHISON, *Appellate Military Judges*

————————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————————

RUGH, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of two specifications of wrongful use of a controlled substance and one specification of larceny, in violation of Articles 112a and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a and 921 (2012). The military judge sentenced the appellant to ten months' confinement and a bad-conduct discharge. The convening authority (CA) disapproved the finding of guilty to the sole specification of the charge of

Article 121, UCMJ, and then dismissed the charge for legal error.[1] The CA approved four months' confinement and the bad-conduct discharge.

In our first review of this case, we set aside the action of the CA and returned the record of trial to the Judge Advocate General for new post-trial processing because the staff judge advocate's recommendation (SJAR) failed: (1) to advise the CA that, after the dismissal, he must "either approve a sentence no greater than the sentencing authority would have adjudged absent the error or order a sentence rehearing," and (2) to provide the CA with "any guidance at all as to how the [CA] rationally should cure any prejudice in the sentence" caused by the defective larceny specification should he reassess.[2]

After receiving a new SJAR following remand,[3] the CA again disapproved the finding of guilty of larceny and approved a sentence of four months' confinement and a bad-conduct discharge.[4] The appellant now asserts that "[t]his Court should order a sentence rehearing, because the military judge relied on evidence and argument primarily based on the now-dismissed larceny offense to determine [the appellant's] sentence for the remaining drug use charge."[5] In the alternative, the appellant argues that his sentence is inappropriately severe under the circumstances of this case. We disagree.

## I. BACKGROUND

In late summer of 2014, the appellant indulged a budding drug habit by smoking marijuana with a fellow Marine in a base parking lot and using another Marine's prescription amphetamines in the barracks on board Camp Lejeune, North Carolina. His use of both the marijuana and the amphetamines was discovered through positive urinalysis. To help pay for his

---

[1] CA's Action of 17 Mar 2015 at 2.

[2] *United States v. King*, No. 201500106, 2016 CCA LEXIS 10, at *6, unpublished op. (N-M. Ct. Crim. App. 12 Jan 2016) (per curiam). The staff judge advocate originally advised the CA only that: "[i]n order to address the legal error [in the larceny specification] . . . . I recommend you approve only so much of the sentence that provides for a Bad-Conduct Discharge and confinement for a period of four (4) months. I specifically recommend you disapprove all confinement in excess of four (4) months." SJAR Addendum of 18 Feb 2015 at 1-2.

[3] SJAR of 24 Mar 2016.

[4] CA's Action of 29 Apr 2016 at 2.

[5] Appellant's Brief of 11 Jul 2016 at 5. Given our earlier cursory treatment of this AOE, *King*, 2016 CCA LEXIS 10, at *4 ("We disagree. . . ."), we do not apply "law of the case" doctrine.

addiction, the appellant stole money by impersonating a fellow Marine and surreptitiously withdrawing funds from that Marine's bank account.[6]

During presencing, the Government introduced several prosecution exhibits (PE) related to the character of the appellant's prior service and as evidence in aggravation, including:

**PE 1**: a unit punishment book entry for nonjudicial punishment (NJP) received for violation of Article 112a, UCMJ, by wrongfully using an Oxycodone derivative;

**PE 2:** a positive urinalysis result related to the NJP recorded in PE 1;

**PE 3**: a positive urinalysis result for morphine;

**PE 4**: a positive urinalysis for marijuana and amphetamines related to the offenses to which he pleaded guilty;

**PE 5**: a unit record book entry for NJP received for two violations of Article 134, UCMJ, breaking restriction, on 21 and 22 August 2014;

**PE 6**: a NAVMC 118(11) "administrative remarks" form documenting the appellant's counseling for "on or about 8 Aug 2012 . . . knowingly and wrongfully consum[ing] alcohol while under the legal drinking age of 21;"

**PE 7**: a second positive urinalysis for marijuana related to one of the offenses to which he pleaded guilty; and,

**PE 8**: "the appellant's statement to law enforcement discussing the larceny" and his use of Oxycodone.[7]

PE 2 and PE 3 were admitted over trial defense counsel's objection as matters in aggravation related to the larceny specification.[8] Additionally, the government called the larceny victim to testify in aggravation and then requested the military judge award the maximum punishment available at special court-martial. The government counsel based his argument, in part, on the impact of the larceny on the victim and that the appellant used the stolen money to buy Oxycodone.[9]

---

[6] Record at 26-32.

[7] *King*, 2016 CCA LEXIS 10, at *3.

[8] Record at 45 ("[D]uring the providence inquiry, the accused indicated that some of the money from the larceny was used for the purchase of illegal drugs . . . .").

[9] *Id*. at 69-71 ("Because Private King was not faithful, because he was selfish, the government is asking for the jurisdictional max[imum] . . . .").

3

## II. DISCUSSION

### A. Sentence reassessment

For offenses committed prior to the effective date of changes to Article 60, UCMJ, made in the FY 2014 NDAA,[10] the CA may "in his sole discretion . . . dismiss any charge or specification by setting aside a finding of guilty thereto[.]" Art. 60(c)(3), UCMJ, 10 U.S.C. § 860 (2012). This "broad authority under Article 60(c), UCMJ, includes the power to dismiss charges and reassess a sentence to cure a legal error or moot allegations of such." *United States v. Perez*, 66 M.J. 164, 165 (C.A.A.F. 2008). After dismissing a charge, the CA must choose whether to order a rehearing on the sentence or to reassess the sentence himself. RULE FOR COURTS-MARTIAL (R.C.M.) 1107(e)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).

*1. Advice in the SJAR of 24 March 2016*

As a threshold matter, the CA may not reassess the appellant's sentence without receiving specific guidance from his or her SJA:

> [I]t is entirely appropriate and certainly commendable for a convening authority in his discretion to undertake curing [legal] error before the case reaches appellate levels. . . . Where he does so, his action must be guided by the same rules applicable to appellate authorities. . . . Thus, where a staff judge advocate recommends certain curative action on the sentence . . . it is imperative that he make clear to the convening authority the distinction between, on the one hand, curing any effect that the error may have had on the sentencing authority and, on the other, determining anew the appropriateness of the adjudged sentence.

*United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991) (citations and internal quotation marks omitted).[11] Since *Reed*, the Court of Appeals for the Armed Forces (CAAF) has clarified that appellate authorities "determining whether to reassess a sentence or order a rehearing" should consider the following "illustrative . . . points of analysis":

---

[10] National Defense Authorization Act for Fiscal year 2014, Pub. L. No. 113-66, 127 Stat. 672 (2013).

[11] S*ee also United States v. Josey*, 58 M.J. 105, 109 (C.A.A.F. 2003) (remanding record to the CA because it was "not clear whether the convening authority fully considered the sentence reassessment requirements of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and" *Reed*); *Sales*, 22 M.J. at 308 (allowing sentence reassessment only "if the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity").

(1) Whether there has been a dramatic change in the penalty landscape or exposure;

(2) Whether sentencing was by members or a military judge alone;

(3) Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;

(4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

On remand, the staff judge advocate (SJA) advised the CA that "you must either approve a sentence no greater than the sentencing authority would have adjudged absent the error or order a sentence rehearing," recited the *Winckelmann* factors, applied them to the facts of the appellant's case, and suggested that "the application of these factors demonstrates that the sentencing authority would have awarded a sentence of at least the severity of four (4) months confinement and a Bad-Conduct Discharge even absent the defective larceny specification."[12] We find that the SJA properly advised the CA on remand.

*2. The CA's sentence reassessment*

We review a properly advised CA's decision to reassess a court-martial sentence for an abuse of discretion.[13] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged

---

[12] SJAR of 24 Mar 2016 at 3-4 (stating that: (1) dismissal of the larceny charge did not dramatically change the penalty landscape because the maximum punishment for the two specifications of the remaining charge exceeded the special court-martial jurisdictional maximum punishment; (2) the appellant chose military judge alone sentencing; (3) "[t]he remaining offenses do not capture the gravamen of the criminal conduct, and the aggravating circumstances addressed at the court-martial should not have been admissible to the remaining offenses;" and, (4) the sentence that would have been imposed absent error could reliably be determined).

[13] *See United States v. Rollins*, No. 34515, 2003 CCA LEXIS 303, at *11, unpublished op. (A.F. Ct. Crim. App. 24 Dec 2003) (citing *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) and *United States v. Hawes*, 51 M.J. 258, 260 (C.A.A.F. 1999)), *rev'd in part on other grounds*, 61 M.J. 338 (C.A.A.F. 2005); *see also United States v. Johnson*, 27 M.J. 553, 554 (A.C.M.R. 1988) ("We agree that *Sales* provides the proper guidelines by which to measure the actions of the convening authority in a case such as this, but we do not agree that the convening authority in this case abused his discretion.").

action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted).[14]

In light of the four *Winckelmann* factors, we find that the CA did not abuse his discretion in opting to reassess the sentence. First, even without the larceny specification, the maximum possible punishment for the appellant remained unchanged. Second, sentencing in this case was by a military judge. Applying the fourth factor, the remaining Article 112a, UCMJ, offenses are uncomplicated and of a type whose range of appropriate sentences should be familiar to the CA when fully advised and supported by the SJA.

The third factor presents a closer question. Absent the larceny plea, PE 2 and PE 3 would not have been admissible as evidence in aggravation, removing the sole evidence of one instance of illegal drug use (PE 3, morphine). Nor would the trial judge have known of the larceny, since it was not an "aggravating circumstance" of the drug specifications.[15] The Government counsel argued for a sentence based "primarily upon the circumstances and ramifications of that now-dismissed larceny charge," making the larceny, in our assessment, the "gravamen of the appellant's criminal misconduct."[16]

However, the two drug use specifications to which the appellant pleaded guilty are also serious criminal offenses, particularly in light of the fact that the appellant committed each with fellow Marines while onboard Camp Lejeune. Moreover, serious derogatory information from the appellant's service record–PE 1 (drug use additional to the specifications of which the appellant was convicted), PE 5 (breaking restriction), and PE 6 (underage alcohol use)–would still have been before the trial judge.[17] Under such an even balance, we assume *arguendo* in favor of appellant.[18]

---

[14] S*ee also Winckelmann*, 73 M.J. at 12 (noting that "a reasoned and thorough analysis of the totality of the circumstances presented" when deciding on resentencing receives "greater deference" on review).

[15] *King*, 2016 CCA LEXIS 10, at *7 n.6 ("The record indicates that the marijuana and amphetamine were provided–months after the larceny ceased . . . ."). *See United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (noting a "reassessed sentence must be punishment for only the offense" remaining "as aggravated by facts and circumstances admissible in aggravation of that offense").

[16] *King*, 2016 CCA LEXIS 10, at *7.

[17] *See* R.C.M. 1001(b)(2) (listing "copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused and evidence of any

Because the SJA provided the CA with an accurate summary of the law, and the *Winckelmann* factors tend to support reassessment of the sentence, we are satisfied that the CA's appraisal that the "sentence would have been at least of a certain magnitude had the prejudicial error not been committed," and that the reassessed sentence is appropriate in relation to the affirmed findings of guilty,[19] was not an abuse of discretion.

## B. Sentence appropriateness

"Although we find no error in either the [SJAR or the CA's] action, we have an independent duty to review the appropriateness of [the] appellant's sentence." *United States v. Jordan*, 32 M.J. 672, 675 (A.F.C.M.R. 1991). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). Our review is *de novo*, *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006), providing "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

We have carefully reviewed the record, including the appellant's matters in extenuation and mitigation. Four months' confinement and bad-conduct discharge is not unduly severe given the quality of the appellant's brief military service and the possible maximum punishment available at special court-martial. The appellant's past oxycodone prescriptions, the tragic death of an immediate family member, and his other medical issues do not explain or excuse the illegal use of marijuana and amphetamines on base.[20] The appellant received individualized consideration in sentence reassessment and any further sentence relief would be engaging in clemency—a function for the convening authority. *Healy*, 26 M.J. at 395-96.

---

disciplinary actions including punishments under Article 15," UCMJ, as permissible sentencing evidence).

[18] *See* SJAR of 24 Mar 2016 at 3-4 (advising the CA that the third factor favored the appellant).

[19] *See* R.C.M. 1107(e)(1)(B)(iv).

[20] Defense Exhibit A at 1-2; Record at 62-68; Clemency Request of 23 Apr 2016 at 2.

### III. CONCLUSION

The findings and sentence as approved by the CA in its action of 29 April 2016 are affirmed.

Senior Judge CAMPBELL and Judge HUTCHISON concur.


For the Court



R.H. TROIDL
Clerk of Court