# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 38769 (f rev)**

———————————

**UNITED STATES**
*Appellee*

v.

**Yogendra RAMBHAROSE**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon further review*

Decided 7 August 2020

———————————

*Military Judge:* Tiffany M. Wagner (arraignment); Lynn Watkins.

*Approved sentence:* Bad-conduct discharge, confinement for 6 months, and reduction to E-1. Sentence adjudged 21 October 2014 by GCM convened at Joint Base Charleston, South Carolina.

*For Appellant:* Major Patrick J. Hughes, USAF; Major Annie W. Morgan, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, LEWIS, and RICHARDSON, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge LEWIS and Judge RICHARDSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

J. JOHNSON, Chief Judge:

Appellant's case is before this court for the third time. Appellant was originally tried by a general court-martial composed of a military judge alone in October 2014 for five specifications of abusive sexual contact by causing bodily harm in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1] Appellant pleaded not guilty to the Charge and its five specifications, but with respect to three of the specifications (Specifications 1, 2, and 4), he pleaded guilty to the lesser included offense of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928. The military judge accepted Appellant's guilty pleas on these lesser offenses, and then the case proceeded with trial on the charged greater offenses. The military judge found Appellant guilty of two specifications of abusive sexual contact[2] (Specifications 1 and 3). She found Appellant not guilty of Specification 5. Lastly, she found Appellant not guilty of the remaining two greater offenses of abusive sexual contact, but in accordance with his pleas, guilty of the lesser included offense of assault consummated by a battery (Specifications 2 and 4). As a result of Appellant's guilty pleas and the military judge's findings, Appellant was convicted of two specifications of abusive sexual contact and two specifications of assault consummated by a battery.

The military judge then sentenced Appellant to a bad-conduct discharge, confinement for 18 months, and reduction to the grade of E-1. The convening authority approved the bad-conduct discharge and reduction to the grade of E-1, but reduced Appellant's term of confinement to 15 months.[3]

Upon our initial review, this court set aside Appellant's conviction of one of the specifications of abusive sexual contact as factually insufficient (Specification 3). We affirmed the convictions for the remaining specification of abusive sexual contact (Specification 1) and two specifications of assault consummated by a battery (Specifications 2 and 4), and reassessed the sentence to a bad-conduct discharge, confinement for 13 months, and reduction to the grade of E-1. *United States v. Rambharose*, No. ACM 38769, 2016 CCA LEXIS 756 (A.F.

---

[1] Unless otherwise noted, references to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2012 ed.). Unless otherwise noted, all other references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The military judge made one of these findings of guilty by exceptions and substitutions.

[3] In addition, the convening authority deferred mandatory forfeitures until action pursuant to Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b, and waived mandatory forfeitures for the benefit of Appellant's spouse until the earlier of six months or the expiration of Appellant's term of service pursuant to Article 58b.

Ct. Crim. App. 15 Dec. 2016) (unpub. op.), *rev'd*, 76 M.J. 441 (C.A.A.F. 2017) (mem.) (*Rambharose I*).

The United States Court of Appeals for the Armed Forces (CAAF) granted review and set aside this court's decision. *United States v. Rambharose*, 76 M.J. 441 (C.A.A.F. 2017) (*Rambharose II*). The CAAF remanded the record of trial to this court for a new review under Article 66, UCMJ, 10 U.S.C. § 866, in light of the CAAF's decision in *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017). *Id.*

On remand from the CAAF, this court set aside Appellant's conviction for abusive sexual contact that it had originally affirmed in *Rambharose I* (Specification 1), but affirmed the lesser included offense of assault consummated by a battery except the words "on divers occasions," in accordance with Appellant's plea of guilty. *United States v. Rambharose*, No. ACM 38769 (rem), 2018 CCA LEXIS 341 (A.F. Ct. Crim. App. 13 Jul. 2018) (unpub. op.) (*Rambharose III*). This court also affirmed Appellant's convictions for the other two lesser included offenses of assault consummated by a battery to which Appellant pleaded guilty (Specifications 2 and 4), and the Charge under Article 128, UCMJ. The court again set aside the finding of guilty of abusive sexual contact for Specification 3 as factually insufficient (as it had in *Rambharose I*), and dismissed that specification with prejudice. The finding of guilty as to the Charge under Article 120, UCMJ, and the sentence were also set aside. This court authorized a rehearing of the set-aside findings for Specification 1 and the Charge under Article 120, UCMJ, and the sentence.

The net result of *Rambharose III* was that Appellant's convictions for the three assaults consummated by a battery (Specifications 1, 2, and 4), in accordance with his guilty pleas, were affirmed, and the case was remanded to the convening authority with a rehearing authorized as to the greater offense of abusive sexual contact on divers occasions as charged in Specification 1, as to the Charge, and as to the sentence.

On 4 January 2019, the convening authority took action on Appellant's case for a second time. The convening authority stated, *inter alia*, that a "rehearing on the finding of guilt as to the greater offense of abusive sexual contact in Specification 1 of the Charge of the former proceedings, was found to be impracticable."[4] The convening authority then reassessed the sentence for the remaining findings of guilty to a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. The convening authority "con-

---

[4] However, the convening authority did not state that a rehearing on the sentence was impracticable.

clude[d] that the reassessed sentence [was] appropriate based on the individualized consideration of [Appellant], the nature and seriousness of the offenses, [Appellant's] record of service, and all matters contained in the record of trial."

Appellant now raises three issues on appeal: (1) whether it was improper for the convening authority to reassess the sentence where this court had not expressly authorized a reassessment; (2) whether it was improper for the convening authority to reassess the sentence given the dramatic change in the penalty landscape and impossibility of ascertaining how severe the punishment would have been absent the constitutional error at trial; and (3) whether Appellant is entitled to sentence relief because the Air Force improperly discharged him while his appeal was pending. In addition, we consider whether Appellant is entitled to relief for unreasonable post-trial delay. We find no error materially prejudicial to Appellant's substantial rights, and we affirm the sentence as reassessed by the convening authority.

## I. BACKGROUND

The opinion in *Rambharose I* explains the facts underlying Appellant's convictions. For present purposes, a brief summary is sufficient. Appellant groped three junior female co-workers who worked with him at Joint Base Charleston, South Carolina. With regard to Specification 1, Appellant cupped and squeezed the breast of a civilian employee, JF, over her clothing without her permission after she had asked him to come to her desk to help her with a work-related issue. With regard to Specification 2, Senior Airman (SrA) BN[5] was giving Appellant a ride home after he consumed alcohol at a unit social function when he touched her breast over her clothing and touched her knee without her permission. With regard to Specification 4, Appellant touched SrA TW's[6] breast over her clothing during a conversation in the workplace. During his guilty plea inquiry with the military judge, Appellant portrayed these incidents as immature and of a "joking" nature on his part, and not intended for sexual gratification. In their testimony, the victims generally agreed that Appellant had an immature personality, but also testified to the effect that they were surprised and offended by his conduct.

---

[5] SrA BN had separated from the Air Force and was a civilian at the time of Appellant's trial, and went by a different surname.

[6] SrA TW was a staff sergeant at the time of Appellant's trial.

## II. DISCUSSION

### A. Scope of Convening Authority Discretion on Remand

#### 1. Law

The proper completion of post-trial processing is a question of law we review de novo. *United States v. Zegarrundo*, 77 M.J. 612, 614 (A.F. Ct. Crim. App. 2018) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

Rule for Courts-Martial (R.C.M.) 1107(e)(2)(B)(iii) provides:

> *Sentence reassessment.* If a superior competent authority has approved some of the findings of guilty and has authorized a rehearing as to other offenses and the sentence, the convening authority may, unless otherwise directed, reassess the sentence based on the approved findings of guilty and dismiss the remaining charges. Reassessment is appropriate only where the convening authority determines that the accused's sentence would have been at least of a certain magnitude had the prejudicial error not been committed and the reassessed sentence is appropriate in relation to the affirmed findings of guilty.

#### 2. Analysis

Appellant contends that, on remand from a superior competent authority such as this court, a convening authority is authorized to reassess a sentence only when expressly permitted to do so by the superior authority. Therefore, in this case, the convening authority could not lawfully reassess the sentence because this court's decision in *Rambharose III* did not specifically authorize such action. We disagree.

In *Rambharose III*, this court (1) approved some of the findings of guilty and (2) authorized a rehearing as to the set-aside findings and the sentence. *Rambharose III*, unpub. op. at *9. Therefore, on remand, the case was squarely within the application of R.C.M. 1107(e)(2)(B)(iii), and because this court did not "otherwise direct," the convening authority had discretion to "reassess the sentence based on the approved findings of guilty and dismiss the remaining charges."[7] R.C.M. 1107(e)(2)(B)(iii). We find unconvincing Appellant's arguments to the contrary, which we address in turn.

---

[7] The convening authority's action dated 4 January 2019, after noting that a rehearing on findings was determined to be impracticable, did not purport to dismiss Specification 1 alleging abusive sexual contact on divers occasions, nor the Charge of violating Article 120, UCMJ, nor does the original record of trial contain other documentation

Appellant contends that in the event the convening authority found a rehearing on the *sentence* impracticable—which he infers to be the case here, although the 4 January 2019 action contains no such statement—he was limited to approving a sentence of "no punishment." However, the cases Appellant cites for this proposition were interpreting an earlier, different version of R.C.M. 1107, which did not include the express authority for reassessment by the convening authority now found at R.C.M. 1107(e)(2)(B)(iii). *See United States v. Montesinos*, 28 M.J. 38, 44 (C.M.A. 1989); *United States v. Burns*, No. ACM. 29449 (f rev), 1993 CMR LEXIS 322 (A.F.C.M.R. 30 Jul. 1993) (unpub. op.); *United States v. Watruba*, No. ACM 28902 (f rev), 1993 CMR LEXIS 276 (A.F.C.M.R. 2 Jun. 1993) (per curiam) (unpub. op.). As the Government explains in its answer brief, the Rules for Courts-Martial were modified in 2004 to expressly provide the convening authority the option of sentence reassessment which Appellant contends is still forbidden. *See Manual for Courts-Martial, United States* (2012 ed.), App. 21, at A21–90.

Appellant cites opinions of this court in which the decretal paragraph explicitly purported to authorize the convening authority to reassess the sentence. *See, e.g.*, *United States v. Rose*, 67 M.J. 630, 638 (A.F. Ct. Crim. App. 2009); *United States v. Arrington*, No. ACM 37638 (f rev), 2013 CCA LEXIS 395, at *4 (A.F. Ct. Crim. App. 9 May 2013) (unpub. op.). Appellant invokes the "surplusage" canon of statutory construction, *see United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017), and applies it in this judicial context, reasoning that such authorizations would have no purpose if the convening authority possessed the power to reassess sentences even without such language. However, such language cannot modify the plain meaning of R.C.M. 1107(e)(2)(B)(iii). We find nothing perplexing in the inclusion of language in our decretal paragraphs that is descriptive or explanatory rather than operative.

Appellant's reference to R.C.M. 1107(e)(2)(C)(iii) is equally unconvincing. That rule—relating to rehearing on sentence only—provides, in pertinent part: "If the convening authority determines a rehearing on sentence is impracticable, the convening authority may approve a sentence of no punishment without conducting a rehearing." First, we note in this case the convening authority's action does not indicate the predicate finding that a rehearing on sentence, as opposed to findings, was impracticable—nor did R.C.M. 1107(e)(2)(B)(iii) require the convening authority to make such a finding before reassessing the

---

that Specification 1 and the Article 120 Charge were dismissed. Accordingly, in our decretal paragraph, we dismiss the outstanding Charge and Specification 1 with prejudice as it relates to a violation of Article 120, UCMJ, and direct the publication of a court-martial order that reflects the ultimate disposition of the remaining specifications (Specifications 1, 2, and 4) as to the Charge as it relates to the violation of Article 128, UCMJ.

sentence. Thus, it is not clear that portion of R.C.M. 1107(e)(2)(C)(iii) even applies in the instant case. Moreover, and more importantly, R.C.M. 1107(e)(2)(C)(iii) states the convening authority "*may*" approve a sentence of no punishment in such a situation. Thus the provision is permissive rather than mandatory, and it does not contradict much less override the plain language of R.C.M. 1107(e)(2)(B)(iii) which authorized sentence reassessment in lieu of a rehearing on findings in this situation.

We agree with Appellant that when this court remands a case to a convening authority, the convening authority can "only take action that conforms to the limitations and conditions prescribed in the remand." *Montesinos*, 28 M.J. at 44 (citation omitted). However, nothing this court decreed in *Rambharose III* barred the convening authority from reassessing the sentence in accordance with R.C.M. 1107(e)(2)(B)(iii). Accordingly, we find the convening authority did not exceed the scope of his authority when he did so.

## B. Convening Authority's Sentence Reassessment

### 1. Additional Background

Before the convening authority took action on 4 January 2019, the acting staff judge advocate (SJA) prepared a written recommendation that explained in detail the criteria and factors involved in sentence reassessment as identified in *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986), and *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). The SJA analyzed each of the factors set forth in *Winckelmann* and concluded that although the first factor—changes in punitive exposure—weighed against reassessment, the remaining three factors weighed in favor of it. The SJA recommended the convening authority approve a reassessed sentence of a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. The SJA's recommendation was served on the Defense, which did not submit a response or additional matters for the convening authority's consideration.

In the action dated 4 January 2019, the convening authority stated, *inter alia*: "Considering the totality of the evidence, I determine to my satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity. I hereby reassess the sentence to a bad conduct discharge, confinement for six (6) months, and reduction to the grade of E-1 (airman basic)."

### 2. Law

#### a. Standard of Review

The parties disagree as to the standard of review that a Court of Criminal Appeals (CCA) applies when reviewing a sentence reassessed by a convening authority. There is some support for the Government's position that we review

the convening authority's decision for an abuse of discretion. *See United States v. King*, No. 201500106, 2016 CCA LEXIS 712, at \*7 (N.M. Ct. Crim. App. 15 Dec. 2016) (unpub. op.) (citations omitted); *United States v. Rollins*, No. ACM 34515, 2003 CCA LEXIS 303, at \*11 (A.F. Ct. Crim. App. 24 Dec. 2003) (unpub. op.) (citations omitted), *rev'd in part on other grounds*, 61 M.J. 338 (C.A.A.F. 2005); *see also United States v. Johnson*, 27 M.J. 553, 554 (A.C.M.R. 1988) (implying abuse of discretion review of convening authority sentence reassessment). This view also carries some intuitive appeal, in that we are reviewing an exercise of discretion on the part of a subordinate authority. *Cf. United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) ("A sentence reassessment is reviewed for an abuse of discretion.").

However, in light of precedent from our superior court, we agree with Appellant that a CCA reviews sentence reassessment by a convening authority de novo. In *United States v. Williams*, 54 M.J. 380, 380–81 (C.A.A.F. 2000) (mem.), the CAAF explained "that if a [CCA] authorizes a sentence reassessment by a convening authority upon remand, the [CCA] must make its own determination as to whether the reassessed sentence comports" with *Sales*, 22 M.J. 305, and *United States v. Jones*, 39 M.J. 315 (C.M.A. 1994). *Williams* cited the CAAF's decision in *Harris*, where the court reviewed the standard for sentence reassessment by a CCA. 53 M.J. at 88 (citations omitted). In *Harris*, the CAAF concluded: "If the [CCA] cannot determine that the sentence would have been of at least a certain magnitude absent the error, it must order a rehearing. *. . . The [CCA] must make the same determination if a sentence has been reassessed by a convening authority upon remand.*" *Id*. (emphasis added) (citations omitted). The CAAF's explanations that the CCA must make its "own determination" and the "same determination" as it does when conducting its own sentence reassessment lead us to the conclusion the CAAF has prescribed de novo review of convening authority reassessments by the CCAs.[8]

In any event, the distinction between review de novo and review for an abuse of discretion is of no moment in the instant case. Under either standard of review, we find no error, as we explain below.

### b. Sentence Reassessment

Under Article 59(a), UCMJ, 10 U.S.C. § 859(a), a court-martial sentence may not be held incorrect by virtue of legal error "unless the error materially prejudices the substantial rights of the accused." If a reviewing authority can

---

[8] In context, we further conclude the statement in *Harris* that "[a] sentence reassessment is reviewed for an abuse of discretion" refers specifically to review by the CAAF. 53 M.J. at 88.

reliably conclude that an adjudged sentence would have been of at least a certain severity, absent error, "then a sentence of that severity or less will be free of the prejudicial effects of error; and the demands of Article 59(a) will be met." *Sales*, 22 M.J. at 308. "[I]f the error at trial was one of constitutional magnitude, then it would seem necessary that the [CCA] should be persuaded beyond a reasonable doubt that its reassessment has rendered harmless any error affecting the sentence adjudged at trial." *Id.* at 307 (citing *Chapman v. California*, 386 U.S. 18 (1967)) (additional citation omitted).

As described above, where a CCA has approved some of the findings of guilty and authorized a rehearing on some of the findings and the sentence, R.C.M. 1107(e)(2)(B)(iii) authorizes the convening authority to reassess the sentence based on the approved findings, provided that he "determines that the accused's sentence would have been at least of a certain magnitude had the prejudicial error not been committed and the reassessed sentence is appropriate in relation to the affirmed findings of guilty."

Whether a sentence may be reliably reassessed is "based on the totality of the circumstances presented." *Winckelmann*, 73 M.J. at 15. The CAAF has identified the following non-exclusive factors to "assist" in such an analysis: (1) "Dramatic changes in the penalty landscape and exposure;" (2) "Whether an appellant chose sentencing by members or a military judge alone;" (3) "Whether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and . . . whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;" and (4) "Whether the remaining offenses are of the type that judges of the [CCAs] should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Id.* at 15–16 (citations omitted).

### 3. Analysis

Appellant contends that, assuming *arguendo* this court's remand order permitted the convening authority to conduct a sentence reassessment analysis, under the circumstances of this case reassessment is not appropriate in light of *Sales* and *Winckelmann*. We disagree and conclude, based on the totality of the circumstances and in light of the *Winckelmann* factors, that sentence reassessment was appropriate and the sentence reassessed by the convening authority removed the prejudicial effects of the previous constitutional errors beyond a reasonable doubt. We consider the factors in turn.

#### a. Changes to the Penalty Landscape and Exposure

We agree with Appellant that there has been a substantial change to his punitive exposure. Based on the two specifications of abusive sexual contact

and two specifications of assault consummated by a battery for which the military judge originally sentenced Appellant, at trial Appellant faced a maximum sentence that included a dishonorable discharge, confinement for 15 years, total forfeiture of pay and allowances, and reduction to the grade of E-1. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 45.e.(4); *MCM*, pt. IV, ¶ 54.e.(2). The maximum punishment for the three remaining offenses of assault consummated by a battery includes a bad-conduct discharge, confinement for 18 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. *MCM*, pt. IV, ¶ 54.e.(2). We conclude this substantial change weighs against reassessment.

### b. Sentencing by Military Judge Alone rather than Members

In *Winckelmann*, the CAAF explained: "[a]s a matter of logic, judges of the [CCAs] are more likely to be certain of what a military judge would have done as opposed to members." 73 M.J. at 16.

Appellant contends that this factor weighs against reassessment because "this [c]ourt is left with the task of analyzing the propriety of the convening authority's sentence reassessment, which is more comparable to a sentence imposed by a court-martial panel versus one issued by a military judge." However, Appellant misconstrues the nature of our de novo review of the propriety of sentence reassessment in this case in light of *Winckelmann*. The question at this stage of the analysis is not the specific sentence that the convening authority reassessed for Appellant; the question for us, as it was for the convening authority, is whether we can reliably determine what the original sentencing authority would have imposed had the errors at trial not occurred. *See Sales*, 22 M.J. at 308. In this case, that sentencing authority was a military judge rather than court members. Accordingly, we weigh this factor in favor of reassessment.

### c. Gravamen of the Criminal Conduct

Despite the fact that Appellant is no longer convicted of two specifications of abusive sexual conduct, we nevertheless find "the remaining offenses capture the gravamen of criminal conduct included within the original offenses." *Winckelmann*, 73 M.J. at 16. Appellant remains convicted of touching a sexually sensitive part of the body of three of the original four victims, without their consent. It is notable and troubling that Appellant displayed a distinct pattern of such behavior despite the negative reactions of his victims. It is also troubling that Appellant committed his offenses both in the workplace as well as off-duty, and committed them against junior female co-workers. Whether or not Appellant derived sexual gratification from his behavior, his repeated misconduct was offensive and had a manifest tendency to undermine the good order and discipline of his unit.

Relatedly, we note that in sentencing proceedings none of the victims identified in the specifications for which Appellant was originally convicted at trial either testified or provided a statement to the court. The military judge based her sentence on the evidence presented with regard to findings, that is, her guilty plea inquiry with Appellant and the findings testimony of the victims. Therefore, the evidence on which the military judge based her sentencing decision would have been substantially similar had Appellant been convicted at trial of only the three remaining offenses.

For the foregoing reasons, we find this factor weighs in favor of reassessment.

### d. Nature of the Remaining Offenses

Appellant remains convicted of three incidents of assault consummated by a battery in violation of Article 128, UCMJ. These offenses are not of a type that is unfamiliar to this court. As with the second factor, Appellant misconstrues the nature of our inquiry, and comments that "the convening authority is not a judge, and he has no experience to determine what judicial punishments should flow from a court-martial for Assault Consummated by Battery." Once again, our focus in our de novo consideration of the *Winckelmann* factors is not the reassessed sentence the convening authority settled on, but whether we can reliably determine what the sentencing authority would have done. We find that this factor also weighs in favor of reassessment.

### e. Conclusion Regarding Sentence Reassessment

Weighing the *Winckelmann* factors together, recognizing that they are "illustrative" and not "dispositive," and considering the totality of the circumstances, we agree with the convening authority that it is possible to reliably determine a sentence the military judge would have imposed had the errors at trial not occurred.

We further conclude that such a sentence would have included a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. Because the errors were constitutional in nature, we must be satisfied the reassessed sentence removes any prejudicial effect beyond a reasonable doubt. *See Hukill*, 76 M.J. at 222; *Sales*, 22 M.J. at 307; *Rambharose III*, unpub. op. at *5–6. We note that the military judge originally imposed a sentence of confinement for 18 months[9] in addition to a bad-conduct discharge and reduction to the grade of E-1. As described above, the gravamen of the criminal conduct and the evidence upon which the military judge would have made her sentencing decision absent the errors would have been substantially similar to the

---

[9] Notably, this term of confinement was two months longer than the 16 months trial counsel recommended.

original trial. Furthermore, we believe that due to training and experience, the military judge—as compared to court members—would be influenced less by either the maximum imposable punishment or the label attached to Appellant's offenses, and likely to focus on the nature and circumstances of the offenses themselves. Accordingly, having ourselves reassessed the sentence, we are satisfied beyond a reasonable doubt that, absent the constitutional errors, the military judge would have imposed a sentence no lower than that reassessed by the convening authority.

## C. Sentence Appropriateness

### 1. Additional Background

In support of his appeal, Appellant submitted a declaration to the court wherein he asserts, *inter alia*, that on 24 May 2019 some unknown person at the Air Force Personnel Center prematurely separated him from the Air Force, despite the fact that his appeal was still pending. Appellant describes various adverse medical, financial, and other consequences to himself and his family that he asserts had only been partially resolved as of the date of his declaration, 7 August 2019. We granted Appellant's motion to attach the declaration.

### 2. Law

Whether this court has jurisdiction over an issue asserted on appeal is a question of law we review de novo. *United States v. Buford*, 77 M.J. 562, 564 (A.F. Ct. Crim. App. 2017) (citing *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017)) (additional citation omitted). Similarly, "[t]he scope and meaning of Article 66(c), UCMJ, which is the source of this court's authority, is a matter of statutory interpretation, which, as a question of law, is reviewed de novo." *Buford*, 77 M.J. at 564 (citing *United States v. Schloff*, 74 M.J. 312, 313 (C.A.A.F. 2015), *cert. denied*, 136 S. Ct. 915 (2016)). "The burden to establish jurisdiction rests with the party invoking the court's jurisdiction." *United States v. LaBella*, 75 M.J. 52, 53 (C.A.A.F. 2015) (citation omitted).

Article 66(c) "clearly establishes a discretionary standard for sentence appropriateness relief awarded by the [CCAs]," provided the CCA identifies a "legal error or deficiency." *United States v. Gay*, 75 M.J. 264, 268 (C.A.A.F. 2016) (citations omitted). However, Article 66(c) "does not extend [our] reach to all finance or personnel matters that may have some link to a court-martial sentence." *Buford*, 77 M.J. at 565. Accordingly, we have declined to "grant [sentence] relief for . . . administrative matter[s] unrelated to any legal deficiency and unconnected to the legality or appropriateness of a court-martial sentence." *Id.*

Generally, Article 66, UCMJ, does not authorize a CCA to consider materials outside the "entire record" when reviewing issues that were not raised by

anything in the record. *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

### 3. Analysis

Appellant requests that we exercise our authority to reduce his sentence pursuant to Article 66(c), UCMJ, to redress the harm he suffered as a consequence of the premature execution of his punitive discharge in May 2019. In light of this court's decision in *Buford* and the CAAF's recent decision in *Jessie*, we decline to do so.

In *Buford*, this court declined to grant relief where the appellant contended that he had been incorrectly denied pay during a period of accrued leave due to errors in the Air Force's personnel and finance systems following his court-martial. 77 M.J. at 563–64. This court explained Article 66, UCMJ, provided no authority to review the asserted pay errors because they did "not concern the legality or appropriateness of an approved court-martial sentence," and were "plainly a collateral administrative matter." *Id.* at 565. Similarly, the circumstances of which Appellant complains in the instant case are "administrative matter[s]" that are "unconnected to the legality or appropriateness of a court-martial sentence." *Id.*

In addition, the events Appellant complains of did not begin until May 2019, well after the record was docketed with this court, and they are not reflected in the "entire record" as the CAAF explained that term in *Jessie*. 79 M.J. at 440–41. Appellant does not allege, and his declaration does not suggest, cruel or unusual punishment in violation of the Eighth Amendment or Article 55, UCMJ, to implicate the exception to the general rule the CAAF recognized in *Jessie*. *See id.* at 443–44. Accordingly, under *Jessie*, Appellant's assignment of error is outside of this court's authority prescribed by Article 66, UCMJ.

### D. Post-Trial Delay

Although not raised as an assignment of error, we note the record of trial was not re-docketed with this court until 11 February 2019, 38 days after the convening authority took action on 4 January 2019. This period exceeded the 30-day threshold for a presumptively unreasonable post-trial delay the CAAF established in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Accordingly, we have considered the four factors identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated. *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004)).

Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering all the

circumstances together, including *inter alia* the absence of a demand for speedy post-trial processing and the fact that the delay exceeded the applicable *Moreno* standard by only eight days, *see Moreno*, 63 M.J. at 138, 142, we are convinced the delay was not so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(c), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

### III. CONCLUSION

The finding of guilty as to the lesser-included offense of assault consummated by a battery except the words "on divers occasions" for Specification 1, the findings of guilty as to the lesser-included offenses of assault consummated by a battery for Specifications 2 and 4, and the finding of guilty as to the lesser-included offense of assault consummated by a battery in violation of Article 128, UCMJ, for the Charge were previously affirmed. The finding of guilty of abusive sexual contact on divers occasions for Specification 1 and the finding of guilty of the Charge in violation of Article 120, UCMJ, were previously set aside; they are now **DISMISSED WITH PREJUDICE**. The approved sentence is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). The sentence, as reassessed by the convening authority, is **AFFIRMED**.[10]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[10] We direct the publication of a court-martial order that reflects the ultimate disposition of the Charge and Specifications in this case.